BARCLAY, DEMANDANTE Y APELANTE, *v.* LA SUCESIÓN DE JUAN CARLOS McCORMICK ET AL., DEMANDADOS Y APELADOS.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre nulidad de testamento y otros extremos.

No. 2338.—Resuelto en julio 26, 1921.

SUCESIÓN INTESTADA—HEREDEROS FORZOSOS EN 1886—HIJOS NATURALES RECONO-CIDOS.—De acuerdo con la legislación vigente en Puerto Rico en el año 1886, en el caso de sucesión intestada los hijos naturales eran solamente herederos de todos los bienes en caso de falta de herederos de un grado superior, al cual la madre seguramente pertenecía. El primer orden era, descendientes legí-timos, o aquellos legitimados por subsiguiente matrimonio o concesión real. El segundo orden era, ascendientes legítimos; el tercer orden, colaterales hasta el cuarto grado, después la esposa sobreviviente y entonces el Estado. A falta de hijos legítimos, los hijos naturales tenían un derecho junto con la madre a una sexta parte de los bienes.

ID.—CONOCIMIENTO JUDICIAL DE LEYES EXTRANJERAS—*Common Law.*—Pude to-marse conocimiento judicial de que gran parte de la ley en Inglaterra y en muchos Estados de los Estados Unidos es no escrita, o sea, lo que se conoce como Ley Común, pero no puede tomarse conocimiento judicial de la Ley Co-mún en Inglaterra o cuando ha sido modificado por el estatuto ni del presente estado de la ley. En tales casos es necesario probar el estado actual de la ley de un país extranjero mediante peritos.

ID. — CAUSA DE ACCIÓN — DEMANDA INSUFICIENTE. — Una demanda deducida en Puerto Rico por hijos naturales reconocidos de un súbdito inglés fallecido en 1886 no aduce hechos suficientes si no alega que de acuerdo con las leyes inglesas los demandantes eran herederos forzosos. Y tal alegación es nece-saria haya habido testamento o no.

ID.—TESTAMENTO VÁLIDO.—El testamento otorgado en Puerto Rico por un súb-dito inglés ante el Vice-Cónsul de su nación el día 27 de enero de 1886 es válido, de acuerdo con tratados vigentes entonces entre España e Inglate-rra por los cuales cónsules de ésta podían autorizar testamentos.

Id.—Derechos de Hijos Naturales de Súbditos Ingleses—Ley Aplicable.—
Los derechos de los hijos naturales reconocidos de padres ingleses deben ser
regulados en Puerto Rico por la ley inglesa.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. L. Muñoz Morales.*

Abogado de los apelados: *Sr. E. Acuña.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

Los apelantes en el caso ante nos no hicieron ninguna asignación de errores la que fué hecha por los apelados en la página 5ª. de su alegato y hemos comprobado que el señalamiento comprende los mismos errores que separadamente han sido consignados en el alegato de los apelantes.

Los apelantes sostienen que la corte cometió error, primero, al declarar que los apelantes no eran herederos forzosos de su padre según la legislación española; segundo, al declarar que los apelantes, como hijos naturales, no eran herederos de su padre según la legislación inglesa; y tercero, al declarar válido el testamento otorgado por David Barclay McFarland ante el vice-cónsul inglés en Guayama.

Sólo tenemos que considerar la demanda, puesto que la corte inferior declaró con lugar una excepción previa a ella formulada y dictó sentencia a favor de los demandados.

Según la demanda David Barclay McFarland era un súbdito inglés y en el año 1883 constituyó una sociedad mercantil con Adela Hartman, sociedad que giraba bajo la razón de A. Hartman & Co., y son los bienes de la sociedad y su traspaso lo que está envuelto en esta acción. Aparece de la demanda que McFarland reconoció como hijos naturales suyos a David Barclay y a Elena Barclay.

En 27 de enero de 1886, David Barclay McFarland compareció ante el vice-consul inglés Juan Carlos McCormick y otorgó un documento, el cual según se expresa en la demanda, dijo era su testamento en el que declaró que era soltero y dió y legó todos sus bienes de cualesquiera clases a su madre Helen M. viuda de Barclay, quien residía en Escocia, y omi-

tió hacer mención de sus dos hijos naturales que son los apelantes en este pleito.

David Barclay McFarland falleció en el año 1886, sin más descendientes y la heredera Elena McFarland viuda de Barclay nombró a su hermano John McFarland apoderado suyo, habiendo vendido éste último todos los derechos y acciones de David Barclay en la sociedad de A. Hartman & Co. a Juan Carlos McCormick y William McCormick por la suma de $1,500. El resto de la demanda, además de alegar ciertos fraudes por parte del cesionario y la preterición, habla de traspasos, fallecimientos y herencias, para determinar quiénes eran las partes demandadas necesarias en el pleito. Las cuestiones esenciales han sido expuestas en el resumen de los errores. Sólo tenemos que ver con los bienes muebles y por tanto ninguna cuestión de *lex rei sitae* puede surgir.

Los apelados sostienen en contestación al primer error alegado, que a la fecha del fallecimiento de David Barclay McFarland, o en enero 27, 1886, los hijos naturales no podían ser herederos forzosos toda vez que el testador tenía su madre que vivía. Convenimos con los apelados en que las citas legales hechas por los apelantes sólo muestran que en esa fecha los hijos naturales tenían ciertos derechos, pero no que eran ellos herederos forzosos. Escriche, tomo 3, página 864; *Idem.* páginas 20, 21; *Idem.* página 60; Febrero Reformado, tomo 1, página 369.

La corte inferior dijo lo siguiente:

"El reconocimiento de ellos tuvo lugar en los años 1884 y 1885, época en que no regía el Código Civil español, considerándolos como súbditos españoles; y de acuerdo con la legislación española aplicable, los hijos naturales reconocidos no tenían el carácter de herederos forzosos, en concurrencia con descendientes o ascendientes legítimos; sólo tenían el derecho a alimentos; y si hubiéramos de acudir a la herencia intestada tampoco podrían heredar habiendo ascendientes."

Según entendemos las leyes vigentes en esa fecha, aún en el caso de sucesión intestada los hijos naturales eran sola-

mente herederos de todos los bienes en caso de falta de herederos de un grado superior, al cual la madre seguramente pertenecía. El primer orden era, descendientes legítimos, o aquellos legitimados por subsiguiente matrimonio o concesión real. El segundo orden era, ascendientes legítimos; el tercer orden, colaterales hasta el cuarto grado, después la esposa sobreviviente y entonces el Estado. A falta de hijos legítimos, los hijos naturales tenían un derecho junto con la madre a una sexta parte de los bienes. Los apelantes en ningún caso tendrían no un derecho a insistir en que se anulara completamente el testamento, sino solamente *pro tanto*. Sin embargo, si hubo un testamento válido estos hijos naturales no eran herederos.

En la demanda nada se dice de cuál es la ley en Inglaterra respecto a los derechos de los hijos naturales allí. Discutiremos el punto un poco más tarde, pero suponiendo que no podemos tomar conocimiento judicial de las leyes de Inglaterra, entonces hubiera sido necesario para los apelantes, si ellos reclamaban por virtud de la ley de Inglaterra, haberlo así expresado, o haber consignado sus derechos de acuerdo con la misma en la demanda. Es evidente que los demandantes no fundaban sus derechos como súbditos ingleses. Bajo esta suposición los apelantes sólo podrían recobrar alegando y probando que en Inglaterra no podía haber ninguna preterición de hijos naturales reconocidos. En verdad la suposición o presunción, si no podemos tomar conocimiento judicial de leyes extranjeras, sería que tales leyes eran las mismas que las nuestras, y por tanto que podría haber habido en el año 1886 preterición de los hijos naturales reconocidos en Inglaterra.

Los apelados nos piden prácticamente que tomemos conocimiento judicial de que por las leyes de Inglaterra los hijos naturales reconocidos no tienen ningún derecho a la herencia. Bajo las leyes de evidencia, artículo 53, quizás podamos to-

mar conocimiento judicial de las leyes estatutorias de otro país, pero aquí no sabemos si las leyes relativas a la herencia de hijos naturales reconocidos son escritas o no escritas. Podemos tomar conocimiento judicial de que gran parte de la ley de Inglaterra, así como de muchos Estados de los Estados Unidos, es no escrita, o lo que se conoce como Ley Común. No podemos tomar conocimiento judicial de lo que es la Ley Común en Inglaterra, o cuando ha sido modificada por el estatuto, del presente estado de la ley. 23 C. J. 131. En tales casos es necesario probar el actual estado de la ley de un país extranjero mediante peritos. La demanda nada dice sobre el estado de la ley inglesa y no podemos declarar judicialmente cuáles son actualmente en Inglaterra los derechos de herencia de hijos naturales. Sin embargo, toda vez que David Barclay McFarland era un súbdito inglés la demanda no determina una causa de acción porque no expone como hecho que estos hijos naturales, de acuerdo con las leyes inglesas, tendrían derecho a una parte de la herencia. Y sostenemos que una alegación como ésta sería necesaria hubiera o no hecho Barclay un testamento válido.

Mientras tratemos de esta cuestión y aunque puede ser una declaración incidental, *obiter dicta,* sin embargo, 7 Corpus Juris, página 958 y siguientes tiende a mostrar que en Inglaterra en la Ley Común los hijos naturales reconocidos no tenían derecho sobre los bienes de su padre natural. En algunos Estados un hijo natural puede ser legitimado pero esto es más bien la excepción que la regla. 7 C. J. 948. Tal hijo era *filius nullius.* De modo que, a menos que haya habido algún cambio por el estatuto al cual no nos han referido los apelantes, su derecho a heredar, siendo súbditos ingleses no existe.

Sostienen también los apelantes que el testamento no era válido por haber sido otorgado ante un vice-cónsul. Pueden tener razón en alegar que la autoridad para actuar como

notario debe ser conferida por un tratado y que hay un tratado entre Gran Bretaña y España que confiere a los cónsules tal derecho, de fecha abril 26 de 1886, o tres meses después del testamento en este caso.  Tal vez podemos tomar conocimiento judicial de que en Inglaterra un testamento no necesita ser otorgado ante un notario, pero, salvo error, estamos convencidos por los apelados que había tratados anteriores entre Gran Bretaña, y España que conferían a los cónsules la facultad de actuar como notarios y que ésta es una cuestión de derecho internacional privado de la cual podemos tomar conocimiento, y también estamos convencidos de que un vice-cónsul tiene la misma facultad.

Diremos algo más que puede ser un *obiter ditum*.  Aparecería que en Inglaterra un testamento no necesita ser otorgado ante un notario y sobre este hecho se nos llamó la atención y fué comentado en el caso de *Casiano* v. *Luchetti*, 24 D. P. R. 114.

Somos particularmente de la opinión de que, siendo David Barclay un súbdito inglés, los derechos de los hijos naturales reconocidos deben ser regulados por la ley inglesa.

Hemos recurrido a lo que tal vez puede ser *obiter dicta* en este caso, porque aún cuando no pudiéramos tomar conocimiento judicial del estado de la ley inglesa, sin embargo a estos hijos naturales reconocidos no debe sometérseles a más inconvenientes cuando las cuestiones de las cuales tal vez no pudiéramos tomar conocimiento judicial son susceptibles de tan fácil prueba.

La sentencia debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.